**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Doe et. al.,

Plaintiff,

v.

Regents of the University of Minnesota et. al.

Defendants.

Judge Donovan W. Frank
Magistrate Judge Tony N. Leung

CASE NO. 0:18-cv-01596-DWF-HB

**JOHN DOES 1-2, 5-6, 8-10's RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendant's motion requests the court examine 1,743 pages of exhibits while comparing evidence, examining witness credibility, and making evidentiary inferences. The Defendant then asks the court to thereafter find that it is legally impossible that the University or any of its agents engaged in sex discrimination during the investigation or disciplinary process of the students in question. Despite Defendant's impressive, yet unconventional, use of the e-file system to somehow file and attach 79 exhibits consisting of 1,743 pages, Defendant fails to address or cite to the vast majority of those documents leaving the court to make inferences as to what such documents purport to evidence. This is simply not the standard for summary judgment and Defendant's motion should be summarily denied.

With respect to defendants only legal argument, namely, that after *Cummings* victims of sexual harassment and discrimination under Title IX can no longer collect damages for losses suffered if in any way connected to emotional distress, the University misstates the holding of the case. Cummings does NOT hold, as the University argues, that victims of sexual harassment and discrimination are not entitled to compensatory damages suffered if connected to emotional

distress damages after experiencing sexual harassment or discrimination. The court merely stated that the Plaintiffs cannot be compensated for their emotional distress in isolation. This is an issue of proper jury instructions and compiling a proper special verdict form. Because there is no true issue of standing, and because summary judgment is not the proper means of addressing arguments over the exclusion of categories of damages, Defendant's motion should be denied.

**FACTS**

Plaintiffs hereby incorporate the facts (and subsequent arguments) submitted by their co-plaintiffs. In the fall of 2016, Jane Doe alleged that in the early morning of September 2, she was assaulted by 20 black males. (Marisam Dep. 66:6–67:3; Ex. 2 at UM922–23.). Jane Doe's story was investigated by the Minneapolis Police Department, and it was quickly determined that Jane Doe's allegations were untrue. Id. Ex. 86. Nonetheless, the University embarked on its own highly biased investigation with "optics" noted as a determinative factor. Id. 73:24-75:25. After controlling for proximity to the apartment that night, University officials selected the subjects of the investigation using a simple criterion- their gender.[1] Id. 116:5-117:8. Once selected as a subject, culpability was all but guaranteed given the highly biased process. This is true because the investigation resulted in a one-sided report of investigation and recommended punishments that systematically excluded exculpatory information about the men. The report was compiled with substantial input from Jane Doe who was allowed to play a role in the drafting of the report including tailoring her responses to respond to anticipated logical errors identified by the men. Id. 151:6-155:17.

[1] An inference is required to connect the dots in Marisam's testimony and make this conclusion. However, as the court is aware inferences must be made in favor of Plaintiffs in this motion. See i.g., *Widoe*, 147 F.3d 726 (1998). Marism states that she was unable to compel a female witness to make a statement because she believe she did not have the power. However, Marisam systemically compelled the attendance of all male witnesses. Logically Marisam must have concluded any male witness was also a suspect as evidenced by her compelling them to make a statement.

Although the lead investigator denies any conscious bias, she admits she may have had unintentional bias. See Id.178:4-8 (Admitting that she may be biased toward the plaintiffs as black men). Discovery proved that Ms. Marisam trained the panel tasked with evaluating her own report. Id. 217:24-218:17. Even Ms. Marisam agrees that given that she trained the individuals tasked to evaluate her report, she was likely seen by the panel as more than an investigator or witness. Id. In fact, as Ms. Marisam admits, she was likely seen as an "Expert". Id. 218:14-222:1.

**THE LAW**

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to ANY material fact and that the movant is entitled to judgment as a matter of law." *RSA 1 Limited Partnership v. Paramount Software Associates, Inc.*, 793 F.3d 903 (8th Cir. 2015). The Court must "view all facts in the light most favorable to the nonmoving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts." *Widoe v. Dist. #111 Otoe County Sch.*, 147 F.3d 726, 728 (8th Cir. 1998). It is not the trial court's function to pass upon credibility in evaluating the evidentiary material in support of and in opposition to a motion for summary judgment where the issue of credibility would properly be for the jury. *Fuqua v. Deapo*, 34 F.R.D. 111, 118 (W.D.Ark., 1964)(Citing 6 Moore's Federal Practice, 2d Ed., p. 2032). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Sudden Valley Supply LLC v. Ziegmann*, 91 F.Supp.3d 1146 (E.D.Mo.,2015)(Citing Fed. R. Civ. Pro. Rule 56(e), 28 U.S.C.A.). "The credibility and weight given to … comments is for a jury to decide." *Wilkus v. Fergus Falls Medical Group, P.A.*, 2009 WL 10711134, at *8 (D.Minn., 2009).

It is beyond dispute that private individuals may sue to enforce antidiscrimination statutes such as Title IX and that monetary damages are available to plaintiffs. *Cummings v. Premier Rehab*

*Keller, P.L.L.C.*, 142 S.Ct. 1562, 1569–70 (U.S., 2022). Moreover, a federal funding recipient (such as Defendant) may be considered 'on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract.'" Id. at 1571(Citing *Barnes v. Gorman*, 536 U.S. 181 (2002)). "[T]wo such remedies [are] compensatory damages and injunctions." Id. at 1571.

## ARGUMENT

### I. Plaintiffs have substantial evidence that sex discrimination occurred.

#### a. The 1,743 pages of exhibits attached to Defendant's motion definitively show numerous disputes of material fact as to whether Plaintiffs were subjected to sex discrimination during the investigation and subsequent punishments.

The complaint in this matter was previously found by the Eighth Circuit to have stated plausible claims that the University engaged in sex discrimination. Now, with a more developed record, we have established that the vast majority of those claims are true. However, we have also learned that the investigation and disciplinary process was in fact far more biased than previously known or alleged. For example, the lead investigator, Ms. Tina Marisam, has admitted that she may be biased toward the plaintiffs as black men. Marisam Depo. 178:4-8. Discovery has also established that the lead investigator, Ms. Tina Marisam, influence extended far further than initially alleged. We now know that Ms. Marisam trained the panel tasked with evaluating her own report. Id. 217:24-218:17. Even Ms. Marisam agrees that given she trained the individuals tasked to evaluate her report. She was likely seen by the panel as more than an investigator or witness. Id. In fact, as Ms. Marisam admits, she was likely seen as an "Expert". Id. 218:14-222:1. It is well established law that an expert's opinion (complete with bias) can be evaluated by a trier of fact as evidence in isolation. Thus, it is a logical impossibility under such circumstances that Ms.

Marisam's report (containing her opinions) could be impartially evaluated under such circumstances.

Discovery also revealed new facts about how the report was created. Specifically, we learned that Jane Doe was allowed to actively participate in its drafting including selecting what information would be included. Id. 151:6-155:17.

Having established extreme bias in the investigatory process and subsequent hearing, we must now connect this bias to the underlaying claim of sex discrimination under Title IX - the only remaining claim in this case. Setting aside the general discriminatory impact of this policy whereby the vast majority of reporting students are female and the vast majority of accused are male, this discrimination is relevant to this matter in how the accused were selected- Namely solely based on their race and gender. Id. 116:5-117:8.

It is also true that Marisam only contacted the athletic department to compel the attendance of male witnesses. Id. 110:1-114:7. Marisam admittedly treated all male witnesses as possible suspects, despite having no basis to suspect the student other than gender. Id. However, the influence of Ms. Marisam is not the only new fact that was revealed during discovery. It is also true that the university systematically excluded the male football players from the same protections it offered to female student athletes despite a far greater chance of assault. While the University argues that this discrimination, and the other instances of differential treatment is a distinction between the accused and an accuser, the evidence proves this is not the case. Moreover, the intention of the discrimination is a question of fact, not of law. *Sudden Valley Supply LLC Infra.* (Citing Fed.Rules Civ.Proc.Rule 56(e), 28 U.S.C.A.). Stated otherwise, it is for the jury, not the court to determine. Id.

Putting the logic together, any male present at or around the apartment was systematically classified as a suspect by Marisam based solely on gender. These students were thereafter suspended from further athletic activities and in many cases severely punished with the loss of scholarships and expulsion from the University. The bias here is relevant because the system created by the university assured that males in the vicinity of an alleged sexual assault would be systematically punished without regard to fact. Stated otherwise, under the system created by the University one was guilty by virtue of being a male.

This is the exact behavior that Title IX was enacted to prevent- loss of opportunity based on sex discrimination. The Plaintiffs in this matter have gathered evidence that must be presented to a jury for findings as to whether the Plaintiffs were discriminated against during the investigatory process and subsequent disciplinary process.

**i. Defendant's unconscious bias argument is betrayed by Marisam's actions and failure to mitigate.**

By the University's argument, however, there is simply nothing that can be done to avoid bias were it is not conscious and intentional. However, knowing an act will take place and doing nothing to mitigate it, intentionally allows the act to occur. We know that Ms. Marisam was informed that she may be biased and was instructed to take specific remedial measures, none of which include asserting influence over panel members. Marisam Depo. 178:18-180:2. The argument that because bias is "unintentional" it is unavoidable unfairly allows bias into the process. In fact, bias conscious or otherwise can be avoided with specific remedial measures, such as independent review (a process that did not happen here given the previously noted power Ms. Marisam held over the panel).

**b. Plaintiff's testimony echoes the evidence showing that the Plaintiff's were suspected based solely on sex.**

Comparting statements from the Plaintiffs such as "[I] felt like the lady who interviewed me had a vendetta or something against the team" and "wanted me to get in trouble." Def. Memo. P. 13. It is a bedrock principal of our legal system that these debates as to the weight of the evidence are to be solved by the trier of fact, in this case – a jury. Not, with all due respect to your honor, a single judge with one set of life experiences and perceptions.

**c. The 8th circuit did NOT provide a list of facts that are required to be proven.**

The 8th circuit pointed to specific claims in the complaint in finding that the document sufficiently stated a claim for discrimination under Title IX. The 8th however, never stated that these specific facts were required to prove the sex discrimination claim. In actuality, as previously stated, this case has numerous issues of disputed fact. Defendant argues that because one claim asserted in the complaint was partially refuted

during discovery by one witness, that Plaintiff cannot prove bias even indirectly. This claim is illogical. In fact, discovery sustained the vast majority of claims made in the complaint and revealed new evidence, adding greater weight to Plaintiffs' united claims of bias and discrimination.

There is no question this case is a messy fact intensive endeavor. However, Defendant's Motion containing an incredible 1,743 pages of exhibits alone glosses over a simple, yet critical, fact: Defendant has disproven almost none of the allegations contained in an obsessively detailed complaint which the Eighth Circuit has already affirmed states a claim for sex discrimination. Moreover, new facts have bee

n discovered proving University officials investigating this matter engaged in systematic sex discrimination. Stated otherwise, after discovery, facts exist for a reasonable jury to determine that Ms. Marisam engaged in sex discrimination AND the University Violated title IX.

**II. Plaintiffs have standing to present their claims to the jury.**

**a. Cummings does not prevent monetary recovery or injunctive relief in this case.**

While there is no dispute that the recent decision in *Cummings* will have a substantial and unfortunate effect on the recovery of damages in this case, the case is not the bar to recovery asserted by the Defendant. In fact, *Cummings* affirmed that a federal funding recipient (such as Defendant) may be considered 'on notice that it is subject ….to remedies traditionally available in suits for breach of contract."' *Cummings* at 1571 (Citing *Barnes v. Gorman*, 536 U.S. 181 (2002)). The case similarly affirmed that "two such remedies [are] compensatory damages and injunctions." Id. At 1571. In the operative complaint Plaintiff's clearly seek recovery of such damages and the record has clearly established that such damages exist with respect to each Plaintiff. In fact, the operative complaint in this matter contained a breach of contract claim. With the exception of John Doe 1, all Plaintiffs in this matter were on athletic scholarships, some plaintiffs lost these scholarships. Others chose not to continue due to the impossibility created by Defendant's discrimination. With respect to John Doe 1, the discovery has shown that University bared him from playing Division One football and obtaining a college education and enjoying the benefits of doing such.

With respect to the undersigned's clients, the University's argument can only be relevant with respect to Does 8 & 9, both of whom were suspended for a period of one year and both of whom were denied the ability to play football or complete classes in the fall of 2016. The facts

show that Does 8 & 9 suffered damages from the denial of their right to participate in extracurricular activities and attend school. Denial of these benefits is clearly actionable under Title IX- In fact Title IX was enacted to protect these very rights and to provide a means of redress and compensation when such rights are violated. .

**b. Plaintiffs have supplied Defendants with detailed estimates of damages containing more than mere emotional distress.**

It is unclear where Defendant got the mistaken belief that Plaintiffs are only seeking damages for emotional distress. Plaintiffs all submitted a detailed explanation of damages which clearly outline damages for economic damages related to the economic loss from the denial/ delay of a college degree[2], from loss in standing and earnings after being branded a sex offender, from the loss of scholarships/ delay in scholarship payments, and for future medical expenses for phycological and/ or psychiatric medical services- which is clearly needed in all cases given the testimony.

**c. *Cummings* does not address standing.**

The word "standing" is not found anywhere in the *Cummings* opinion- because the case is not about standing. Defendant's attempt to shoehorn a totally undeveloped standing argument into a summary judgment motion is inappropriate at best. At no point has any Plaintiff ever claimed he is exclusively seeking emotional distress damages. In fact, all Plaintiffs testified as to the compensable difficulties they suffered both in the fall of 2016 and into the future, all a direct result of Defendant's sex discrimination.

## CONCLUSION

[2] Delayed graduation leads to lower lifetime earnings. See Dirk Witteveen & Paul Attewell, 2021. "Delayed Time-to-Degree and Post-college Earnings," Research in Higher Education; Association for Institutional Research, vol. 62(2), pages 230-257 available at: https://ideas.repec.org/a/spr/reihed/v62y2021i2d10.1007_s11162-019-09582-8.html

Defendant cannot argue around the simple mathematical truth- If in an engineered system 'A's are discriminated against and 'M's must be classified as 'A's, then 'M's must be discriminated against. In the present matter,

the University has proudly admitted to its discriminatory treatment of the accused versus the accuser. While in isolation this may be acceptable, this fails to be the case when, as here, sex is the only determinative factor in who is deemed an accused.

The 1,743 pages of exhibits attached to this motion tell a story of sex discrimination and related justifications. The discrimination must be weighed against the credibility of the alleged justifications as to why 1) men were systemically categorized as suspects based on nothing other than sex 2) once suspected they were immediately suspended from any further athletic participation 3) once suspected they were thereafter classified as "Accused" and suspended 4) once classified as "Accused" there were offered no additional protection despite death threats- this in contrast to females involved in the case 5) once "Accused" they were systematically deemed "not credible" and punishment was deemed appropriate, if punishment was refused 5) the "Accused" was thereafter subjected to a clearly biased "hearing" and thereafter punished.

The facts are clear that in all instances, male accounts of events were systematically deemed "not credible" and male witnesses were systematically threatened and coerced while female witnesses were given an option to refuse any testimony.

With respect to damages, the record is equally clear in all instances the male Plaintiffs were suspended and punished. Damages for those punishments are compensable even when later modified or rescinded.

Because this case requires a careful weight of the evidence analysis, evaluation of witness credibility, and evaluation of defenses and justifications, Defendant's motion must be denied under the legal standard for summary judgment.

Dated: November 2, 2022

**MADGETT LAW, PLLC**

/s/David Madgett
David Madgett (#0390494)
333 S 7th Street, Suite 2450
Minneapolis, MN 55402
612.470.6529
dmadgett@madgettlaw.com
ATTORNEY FOR PLAINTIFFS