UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| John Does 1–2 and 4–11, | Civil No. 18-cv-01596 (DWF/TNL) |
| Plaintiffs, | |
| vs. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S SUMMARY JUDGMENT MOTION** |
| Regents of the University of Minnesota, | |
| Defendant. | |

---

A party claiming a fact dispute to oppose summary judgment "must support the assertion by citing to…materials in the record." Fed. R. Civ. P. 56(c)(1)(A). What stands out from even a cursory review of Plaintiffs' opposition briefing is the lack of fact citations. Indeed, less than 20% of the assertions in their "facts" sections even attempt to cite record evidence.

Where there are citations, they reference material not in the record (*e.g.*, Doc. 104 at 5 ("See Police Report")) or fail to support the assertion made (*e.g.*, Doc. 103 at 2 (alleging Jane Doe "play[ed] a role in the drafting of the [EOAA] report" and citing Marisam Dep. (Doc. 95-4) 151:6–155:17 (discussing Jane Doe's sexual assault exam)). Plaintiffs fare no better on the law—they <u>do not cite a single case</u> addressing a claim of sex discrimination.

Plaintiffs can't "simply point to…[their] complaint" or "rest on mere allegations." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). Nor can they meet their burden to identify

evidence of sex discrimination by making false and irrelevant claims. Plaintiffs' failure to identify any support in the record for their sex discrimination claim entitles the University to summary judgment.[1]

## ANALYSIS

1. <u>The Police Investigation & OFP</u>

Plaintiffs' assertions that the police investigation exonerated them and that Jane Doe's Order for Protection was dismissed are neither supported by evidence nor relevant to sex discrimination. (Doc. 103 at 2, 104 at 5-6.) First, there are no documents from the police investigation or OFP proceedings in the record. Second, whether certain Plaintiffs were charged with sex crimes or reached a civil settlement with Jane Doe has no bearing on whether they, or other Plaintiffs, violated the University's Student Conduct Code—let alone the question of sex discrimination at issue here. *See Esteban v. Cent. Mo. State Coll.*, 415 F.2d 1077, 1088 (8th Cir. 1969) ("[I]t is not sound to draw an analogy between student discipline and criminal procedure….").

2. <u>"Optics"</u>

Plaintiffs retreat to their pleadings to make the false assertion that "optics" was a factor in the University's investigation. (Doc. 103 at 2, 104 at 5; Doc. 22 ¶ 46.) Discovery established that no one who had anything to do with the investigation or adjudication of

---

[1] The University does not have the space to address every issue and misstatement in Plaintiffs' responses. It focuses this reply on matters to which Plaintiffs devote particular attention in their briefs.

Jane Doe's sexual misconduct complaint made any statement about "optics." (*See* Doc. 90 at 30.)

3. <u>Identifying Plaintiffs</u>

Jane Doe accused only men of taking part in the group sexual assault she experienced, and she could not identify all of them. (Marisam Dep. 102:8-9, 198:5-203:7.) In response, the University's investigator, Tina Marisam, provided Jane Doe links to photographs of individuals Marisam had information to suggest may have been involved. (*Id.*)

Using available information to help a victim identify individuals who may have participated in sexual misconduct is a basic investigatory practice, not evidence of sex discrimination. Plaintiffs' bald assertions that they were investigated because of their gender are not supported by evidence.

4. <u>The Female Student-Athlete</u>

As outlined in the University's opening brief, Marisam only required individuals accused or potentially accused of sexual misconduct to meet with her. (Doc. 90 at 8-9, 37-38.)[2] Marisam sought to interview others, including the Female Student-Athlete who was in the apartment for some period on the night of the incident. (Marisam Dep. 100:20-24, 106:3-6; *see* Ex. 61 ¶ 11.) But Marisam did not seek to compel the attendance of

---

[2] And while Plaintiffs fault Marisam for interviewing them each once, not one of them testified that they sought an additional meeting, sought to provide additional information, or were in any way hindered in sharing information with EOAA. (*Compare* Doc. 104 at 9, *with* Doc. 90 at 6-8.)

<u>anyone</u> who was not actually or potentially accused of sexual misconduct. (Marisam Dep. 54:8-10, 57:11-12, 100:20-24, 102:6-9, 106:3-6.)[3]

Although the Female Student-Athlete did not respond to Marisam's interview requests, Plaintiffs secured an affidavit from her that was considered by the SSMS panel in its decision-making. (*See* Marisam Dep. 100:20-24, 106:3-6, 125:9-14; Doc. 99-5; JD7 Dep. 128:19-25.) Contrary to Plaintiffs' claims, the affidavit does not state that the Female Student-Athlete ever saw Jane Doe. (*Compare* Doc. 104 at 4, *with* Doc. 99-5.) It merely states the Female Student-Athlete spent about an hour in JD10's bedroom and did not hear or see anything unusual. (Doc. 99-5 ¶¶ 5-7.) None of this testimony provides any evidence to support Plaintiffs' claim of sex discrimination.

5. <u>SSMS Training</u>

It is true that Marisam provided some training to the SSMS panel on the topics of sexual misconduct, sexual harassment, and EOAA's process. (Marisam Dep. 48:7-14, 51:13-52:9, 217:24-218:13.) While Plaintiffs claim Marisam did this to "influence outcomes against male students" (Doc. 104 at 15), the SSMS panel's decision-making belies that assertion.

After hearing all the evidence, the SSMS panel (1) reached a *different finding* from EOAA for five of the ten Plaintiffs, (2) imposed a *lesser sanction* than was recommended for one of those five, and (3) for the other four, imposed *no sanction at all*. (Doc. 90 at

---

[3] That the Female Student-Athlete was never suspected of sexual misconduct was confirmed by Plaintiffs' own testimony. (*E.g.,* JD6 Dep. (Doc. 95-9) 53:4-54:14; JD7 Dep. (Doc. 95-10) 129:10-24; JD8 Dep. (Doc. 95-11) 74:21-23.)

10-11, 17-18.) There is no evidence that the SSMS panel acted as a rubber stamp, let alone that it did so because of gender bias.

6. <u>SSMS Hearing</u>

Rather than address the SSMS panel's determinations, Plaintiffs make unsupported or irrelevant claims concerning the hearing process unconnected to the only remaining legal claim in this case.

First, they falsely allege that the University represented Jane Doe at the hearing, which it did not. (Doc. 104 at 9.) Jane Doe had her own counsel, as did the Plaintiffs. (*See* Doc. 100-3 at 2:14-16, 3:10-4:9, 44:16-45:3.) And so did the University—in accordance with its policy, an attorney was assigned "to bring <u>the University's case</u> before the [SSMS] Committee." (Doc. 99 at UM4391 (emphasis added).)

Second, Marisam testified extensively in the SSMS hearing, and in this case, and was cross-examined by Plaintiffs' attorneys on both occasions. (*See* Doc. 99-4 at UM4914; Marisam Dep. 36:18-23; JD1 Dep. (Doc. 95-5) 152:7-12; JD5 Dep. (Doc. 95-8) 140:3-7; JD9 Dep. (Doc. 95-12) 62:15-21; JD11 Dep. (Doc. 95-14) 125:16-18; *see generally* Marisam Dep.) After the second day of the hearing, at which she was not scheduled to appear, Marisam did not return when asked by the SSMS panel because she was not expecting to be recalled, it was a Friday night, she had had a couple glasses of wine, and she did not feel she was in a mental state to participate. (Marisam Dep. 36:9-37:7, 43:22-44:15, 45:21-24, 47:3-5; Doc. 99-1 at UM4680-82; Doc. 99-4 at UM4914.)

Marisam was willing to testify at another time, but the SSMS panel proceeded to its deliberations without additional testimony. (Marisam Dep. 37:4; Doc. 99-4 at

5

UM4914.) Nothing about these facts suggests gender bias. *See Stenzel v. Peterson*, Civil No. 17-580 (JRT/LIB), 2017 WL 4081897, at *4 (D. Minn. Sept. 13, 2017) ("[M]ere allegations that a disciplinary process was unfair…do not create an inference of gender bias sufficient for Title IX.").

7. Unconscious Bias

Plaintiffs claim that Marisam "admis [*sic*] that she is biased against black males." (Doc. 104 at 9.) Quite the contrary, Marisam testified she is "not aware of implicit bias that I have toward black men." (Marisam Dep. 177:2-7.) But at the same time, Marisam admitted that, by its very definition, she could not be conscious of any "unconscious bias." (*Id.* at 177:3-19.)

That does not mean that EOAA did not make efforts to address potential "unconscious bias." EOAA instituted training, preventive education, and proactive measures to seek input from individuals with different identities—all aimed at mitigating unconscious bias. (Marisam Dep. 178:22-180:20.) And in this case, all EOAA investigators reviewed Marisam's draft report to ensure its findings were supported and unbiased. (Doc. 90 n.5.)

More important, Plaintiffs' claim regarding unconscious bias is irrelevant because Title IX prohibits intentional, not unconscious, sex discrimination. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 74 (1992).

8. Subjective Feelings

Subjective feelings are not relevant to sex discrimination. *Thomas v. Corwin*, 483 F.3d 516, 530 (8th Cir. 2007) ("[C]onclusory allegations…unsupported with specific

6

facts or evidence, are insufficient to create genuine issue of fact…."); *Marler v. Mo. State Bd. of Optometry*, 102 F.3d 1453, 1457 (8th Cir. 1996) ("[The plaintiff's] beliefs have no effect and do not…preclude summary judgment.").

While one Plaintiff testified that he "felt like" Marisam "had a vendetta,"[4] other Plaintiffs testified that Marisam treated them fairly and that they had no concerns with her actions. (JD1 Dep. 134:20-22; JD2 Dep. (Doc. 95-6) 88:4-9; JD6 Dep. 74:9-75:1; JD9 Dep. 46:1-3.) But no Plaintiff's subjective feelings about Marisam have any bearing on the issue of sex discrimination.

And while Plaintiffs spend most of their briefs attacking Marisam, this too is a distraction. There is no dispute that the SSMS panel and the Provost were the actual decision-makers. (Renner Decl. (Doc. 92) ¶ 14; Hanson Decl. (Doc. 91) ¶¶ 10-12.) Plaintiffs devote no argument and identify no evidence—direct, indirect, or otherwise— of gender bias by these decision-makers. (*See* Renner Decl. ¶ 16; Hanson Decl. ¶ 12.) Plaintiffs have failed to meet their burden to produce evidence that would allow a jury to find that the University disciplined the Plaintiffs who were disciplined "on the basis of sex." *Rossley v. Drake Univ.*, 979 F.3d 1184, 1192 (8th Cir. 2020).

9. *Cummings*

Finally, Plaintiffs insist they are entitled to damages, despite the exclusion of emotional distress and other non-contract-based damages from Title IX claims. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562 (2022). *Cummings*

---

[4] Despite this feeling, JD8 was found not responsible and received no sanction. (Doc. 99-10 at UM4944.)

provides that dismissal is warranted when a plaintiff's only claimed damages are not recoverable. *Id.* at 1569.

In arguing that they can prove compensable damages, Plaintiffs avoid their own deposition testimony, which affirms that their only harms are emotional and reputational. (*E.g.*, JD2 Dep. 142:12-17.) To the extent Plaintiffs argue that lifetime earnings or NFL prospects have suffered (Doc. 103 at 9 n.2; Doc. 104 at 19), they cannot rely on inadmissible hearsay to overcome summary judgment. *Tuttle v. Lorilland Tobacco Co.*, 377 F.3d 917, 924 (8th Cir. 2004). Their claim that lost scholarships are compensable does not account for the facts that several Plaintiffs lost no scholarships (Doc. 90 at 17–18) and there is no record evidence that any Plaintiff paid any educational expenses (or any other expenses, in fact) out-of-pocket. And there is no evidence that any Plaintiff will require future medical treatment. (Doc. 104 at 19.) Plaintiffs fail to identify admissible evidence to support a claim for recoverable damages.

## CONCLUSION

The University respectfully asks the Court to grant its motion for summary judgment.

Dated: November 18, 2022

DOUGLAS R. PETERSON
General Counsel
University of Minnesota

 /s/ Carrie Ryan Gallia
Brian J. Slovut (#236846)
Deputy General Counsel
Timothy J. Pramas (#240321)
Senior Associate General Counsel
Carrie Ryan Gallia (#390479)
Senior Associate General Counsel
Office of the General Counsel
360 McNamara Alumni Center
200 Oak Street SE
Minneapolis, MN 55455-2006
(612) 624-4100
slov0002@umn.edu
pram001@umn.edu
ryang001@umn.edu

FAEGRE DRINKER BIDDLE & REATH
Daniel J. Connolly (#197427)
Anthony W. Finnell Jr. (#398817)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000
Daniel.Connolly@FaegreDrinker.com
Anthony.Finnell@FaegreDrinker.com

SOMERMEYER SULLIVAN PLLC
Sean R. Somermeyer (#391544)
225 South Sixth Street, Suite 3900
Minneapolis, MN 55402
(612) 643-3486
ssomermeyer@somsull.com

Attorneys for Defendant Regents of the University of Minnesota